This opinion is uncorrected and subject to revision before
publication in the New York Reports.
--------------------------------------------------------------------

No. 144
Leonard Hutchinson,
          Appellant,
       v.
Sheridan Hill House Corp.,
          Respondent.
----------------------------
No. 145
Matvey Zelichenko,
          Appellant,
       v.
301 Oriental Boulevard, LLC,
          Respondent.
----------------------------
No. 146
Maureen Adler,
          Appellant,
       v.
QPI-VIII, LLC, et al.,
          Respondents.

Case No. 144:
        Brian J. Isaac, for appellant.
        Kevin J. O'Donnell, for respondent.

Case No. 145:
        David M. Schwarz, for appellant.
        Lisa L. Gokhulsingh, for respondent.
        Defense Association of New York, Inc., amicus curiae.

Case No. 145:
        Georgette Hamboussi, for appellant.
        Joseph Horowitz, for respondents.

FAHEY, J.:

These cases teach that it is usually more difficult to define what is trivial than what is significant. The common factual and procedural thread among the three appeals before us is that an individual tripped on a defect in a sidewalk or stairway, and was injured, but was foreclosed from going to trial

- 1 -

on the ground that the defect was characterized as too trivial to be actionable.  We hold that the Appellate Division erred in dismissing the complaint in two of the three cases.

I.

On April 23, 2009, plaintiff Leonard Hutchinson was walking on a concrete sidewalk in the Bronx when his right foot "caught" on a metal object protruding from the sidewalk and he fell, sustaining injuries.  Hutchinson commenced this personal injury action against Sheridan Hill House Corp. (Sheridan).  The sidewalk where Hutchinson tripped abuts a building owned by Sheridan, which is responsible for maintaining the sidewalk in a reasonably safe condition under Administrative Code of the City of New York § 7-210 (a).

Discovery ensued.  Hutchinson was deposed, along with a housing development director associated with Sheridan and two of its porters.  Testimony was given that the sidewalk had been replaced in the summer of 2007.  For his part, Hutchinson described the metal object as being "screwed on in the concrete" and gave rough estimates of its dimensions.

An employee of Sheridan's counsel visited the sidewalk in December 2010 and photographed and measured the metal object. He concluded that the object, cylindrical in shape, projected "between one eighth of an inch . . . and one quarter of an inch" above the sidewalk and was "approximately five eighths of an

inch" in diameter.[1]

Sheridan moved for summary judgment dismissing the complaint, asserting that the defect was trivial in nature and hence nonactionable and that Sheridan did not create, or have actual or constructive notice of, the defect.  Sheridan submitted, among other documents, an affidavit of the law firm employee who had photographed the metal protrusion, giving his measurements; the photographs; the deposition testimony; and the engineer's report.  In response, Hutchinson contended that there are issues of fact regarding whether the metal object created a hazard in the nature of a trap or snare and whether Sheridan had constructive notice of its existence.

Supreme Court granted summary judgment in favor of Sheridan on the ground that it lacked notice of the defect.[2]  The Appellate Division affirmed, holding that Sheridan had demonstrated that it did not have notice of the defect and, in addition, that the metal object's "minor height differential alone is insufficient to establish the existence of a dangerous

---

[1]     A consulting engineer retained by Hutchinson's counsel visited the accident site in May 2011, by which time the protruding object had been removed.  In an unsworn report submitted by Hutchinson as an expert witness disclosure, the engineer stated, without explanation, his opinion that the diameter of the metal object had been about one and a quarter inches.

[2]     In dicta, Supreme Court found the engineer's report admissible under Kearse v New York City Tr. Auth. (16 AD3d 45, 47 n 1 [2d Dept 2005]), but inconclusive, and did not credit his estimate of the object's diameter.

or defective condition" (110 AD3d 552, 553 [1st Dept 2013]).

Two Justices dissented, reminding the majority that " 'there is no minimal dimension test or per se rule that a defect must be of a certain minimum height or depth in order to be actionable' " (id. at 554 [Acosta, J.P. and Saxe, J., dissenting], quoting Trincere v County of Suffolk, 90 NY2d 976, 977 [1997]).  Moreover, the dissenters would have held that "an issue of fact remains as to whether the protruding piece of metal may be characterized as a trap or a snare such as could, without warning, snag a passerby's shoe" (110 AD3d at 556 [Acosta, J.P. and Saxe, J., dissenting]).

Hutchinson appeals pursuant to CPLR 5601 (a).  We affirm.

                              II.

On May 2, 2010, plaintiff Matvey Zelichenko fell while walking down a staircase in the lobby of a residential building in Brooklyn he was visiting for the first time.  The staircase has five risers or vertical elements.  It has four step treads, made of terrazzo, 12 inches in horizontal depth, each with a one-inch nosing that projects over the riser below.  There are handrails on each side, and Zelichenko made use of one.

On the second step tread from the bottom, Zelichenko's right leg "got caught" when he stepped on a part of the nosing where there was a missing piece or "chip."  His leg twisted and he fell, with resulting injuries.  Zelichenko commenced this

personal injury action against 301 Oriental Boulevard, LLC (301 Oriental), the owner of the building.

During discovery, Zelichenko and the superintendent of the building gave deposition testimony. Zelichenko identified several photographs as fairly and accurately depicting the stairway and, in particular, the area of the missing "chip." In one such photograph, a shoe-clad foot is shown on the step tread in question, next to an indentation in the nosing of the step; the toe of the shoe projects over the nosing.

301 Oriental moved for summary judgment dismissing the complaint, contending that the alleged defect in the step was trivial and nonactionable as a matter of law and that it was not on notice of the defect. 301 Oriental relied on an affidavit of an engineering consultant, Jeffrey J. Schwalje, who had inspected, measured, and photographed the staircase in May 2011; the photographs; and the deposition testimony.

Schwalje measured the dimensions of the missing "chip" as 3 1/4 inches in width and 1/2 inch in depth. Schwalje stated that the chipped step tread in question "did not present a tripping or slipping hazard. The small chip in the nosing is forward of a person's foot contact area and would be safely negotiated. There was more than sufficient space behind the chip for an individual to safely plant his/her foot." He further opined that "[a] person descending the stairway would not bear any weight on the chipped space or any other part of the step

edge in the subject step tread unless his/her foot completely overstepped the tread."

Zelichenko opposed the motion, relying on the photographs of the staircase and an affidavit of another engineer, Stuart K. Sokoloff.  With regard to the size of the "chip," Sokoloff agreed with Schwalje's assessment of the width of the "chip" but, based on the photographs, he concluded that the depth of the missing area was one inch in places.

Sokoloff relied on a monograph entitled "The Staircase -- Studies of Hazards, Falls and Safer Design" by architecture professor John Templer.  According to Sokoloff, Professor Templer, after explaining the physical processes whereby a human being walks down stairs, "states that one of the factors that may cause a fall is a broken tread" on a stairway, because "[w]hen our gait on stairs is disrupted or altered we can lose our balance or stumble especially when a defect is unsuspected, unknown, unanticipated and unexpected."  Sokoloff added that "[i]t is necessary that all stair tread[s] be uniform without missing sections to support a person descending a stair in order for [the] person to maintain . . . balance when negotiating the steps."

Sokoloff criticized Schwalje's assertion that there was more than enough space behind the chip for an individual to place his or her foot.  Citing Professor Templer, Sokoloff opined that "the foot can make contact with the end of the nosing."  Sokoloff

explained the process as follows:

> "As the other foot moves down the stairs, the foot currently in contact with the tip of the tread rolls forward until that second foot contacts the tread/step below.  If a portion of the tip/nosing is missing during the stepping process . . . the contact area[] of the front of [the] foot is compromised/ reduced to an extent that there would be insufficient tread area to support the ball/front of [the] foot with full body weight on it, and the foot could roll due to lack of support.  This explains the mechanism of plaintiff's fall."

Supreme Court denied 301 Oriental's motion, ruling that issues of fact existed as to actual or constructive notice and as to whether the alleged defect was trivial as a matter of law. The Appellate Division reversed Supreme Court's order and granted 301 Oriental's motion.

> The Appellate Division stated that

> "[t]he evidence revealed that the alleged defect consisted of a chip measuring about 3 1/4 inches wide and about 1/2 inch deep, located almost entirely on the edge of the second to last step from the bottom, and not on the walking surface.  Upon an examination of all of the facts presented, we find that the alleged defect was trivial, did not possess the characteristics of a trap or nuisance, and, therefore, was not actionable" (117 AD3d 1038, 1040 [2d Dept 2014]).

We granted Zelichenko leave to appeal (24 NY3d 904 [2014]) and now reverse.

                                III.

On March 30, 2010, plaintiff Maureen Adler was injured in a fall on the interior staircase of the apartment building

where she lived.  As she recalled in her deposition testimony, she was walking down the stairs when her right foot "got caught" on "a big clump in the middle of the stair" -- a protrusion of some sort in a step tread -- which had "been painted over." Adler commenced a personal injury action against QPI-VIII LLC and Vantage Management Services, LLC, the owner and manager of the building.

Adler's counsel photographed the protrusion in the step, and at her deposition Adler acknowledged that the photographs fairly and accurately depicted the stairway and the "clump."  Adler testified that the stairway was illuminated by a 60-watt light bulb, that she was "[p]robably looking down" as she descended the stairs, that she did not recall any dirt or debris on the stairs, and that they were not slippery or cracked.  She explained that she was very familiar with the stairway and in fact had seen the "clump" before on previous occasions.

The building superintendent testified that he had not noticed any uneven surface on the stairs prior to Adler's accident nor received any complaints about such.  He stated that the stairs had been painted some "three or four years before" the date of the accident.

Defendants moved for summary judgment dismissing the complaint, asserting that the alleged defect was trivial in nature and hence nonactionable and that they had not created the defect and did not have actual or constructive notice of its

existence.  They relied on Adler's photographs as well as the deposition transcripts.  Notably, defendants did not produce any measurements or other evidence of the dimensions of the "clump."[3]

Supreme Court denied the motion, ruling that defendants had failed to establish as a matter of law that they neither created the alleged defect nor had actual or constructive notice of it, or that the defect was trivial.  The Appellate Division reversed and granted the motion, ruling that "[t]he evidence, and in particular the photographs, established that the alleged defect was trivial as a matter of law and did not possess the characteristics of a trap or nuisance, and, therefore, was not actionable.  In opposition, the plaintiff failed to raise a triable issue of fact" (124 AD3d 567, 568-569 [2d Dept 2015] [citations omitted]).  The Appellate Division did not pass on the issue of notice.  We granted Adler leave to appeal (25 NY3d 903 [2015]) and now reverse.

IV.

In Trincere v County of Suffolk (90 NY2d 976 [1997]), this Court held that "there is no 'minimal dimension test' or per se rule that a defect must be of a certain minimum height or depth in order to be actionable" (id. at 977), and therefore that granting summary judgment to a defendant "based exclusively on the dimension[s] of the . . . defect is unacceptable" (id. at

---

[3]    Adler herself did not offer a measurement of the protrusion at any stage of this action.

977-978).  Plaintiff Trincere tripped over a concrete paving slab, raised about a half-inch in relation to the surrounding slabs in a plaza, and the lower courts dismissed her complaint, ruling the defect trivial as a matter of law.  We held that a court must consider "all the facts and circumstances presented" (id. at 977) before concluding that no issue of fact exists, and emphasized that these factors will include, but should not be limited to, "the dimension[s] of the defect at issue" (id.).  For this reason, we noted that "whether a dangerous or defective condition exists on the property of another so as to create liability . . . is generally a question of fact for the jury" (id. [internal quotation marks omitted]).  Nevertheless, we noted that the Appellate Division had in fact considered all "the facts presented, including the width, depth, elevation, irregularity and appearance of the defect along with the time, place and circumstance of the injury" (Trincere, 90 NY2d at 978 [internal quotation marks omitted]), and we concluded that it had properly ruled that no issue of fact existed (id.).

Trincere thus recognizes the doctrine that a defect alleged to have caused injury to a pedestrian may be trivial as a matter of law, but requires a holding of triviality to be based on all the specific facts and circumstances of the case, not size alone.  In our opinion, we cited Guerrieri v Summa (193 AD2d 647 [2d Dept 1993]), which expressed the trivial defect doctrine as the principle that a defendant " 'may not be cast in damages for

negligent maintenance by reason of trivial defects on a walkway, not constituting a trap or nuisance, as a consequence of which a pedestrian might merely stumble, stub his toes, or trip over a raised projection' " (id. at 647, quoting Liebl v Metropolitan Jockey Club, 10 AD2d 1006, 1006 [2d Dept 1960], rearg denied, 11 AD2d 946 [2d Dept 1960]; see also e.g. Trionfero v Vanderhorn, 6 AD3d 903, 903-904 [3d Dept 2004]; Squires v County of Orleans, 284 AD2d 990, 990 [4th Dept 2001]; Morales v Riverbay Corp., 226 AD2d 271, 271 [1st Dept 1996]).  Trincere and the line of cases in which it stands establish the principle that a small difference in height or other physically insignificant defect is actionable if its intrinsic characteristics or the surrounding circumstances magnify the dangers it poses, so that it "unreasonably imperil[s] the safety of" a pedestrian (Wilson v Jaybro Realty & Development Co., 289 NY 410, 412 [1943]).

The repetition of the phrase "not constituting a trap" in many Appellate Division opinions should not be taken to limit the means by which a plaintiff may demonstrate a question of fact concerning the hazard posed by a physically small defect. Liability does not "turn[] upon whether the hole or depression, causing the pedestrian to fall, . . . constitutes 'a trap' " (Loughran v New York, 298 NY 320, 321-322 [1948]).  The case law provides numerous examples of factors that may render a physically small defect actionable, including a jagged edge (see e.g. Lupa v City of Oswego, 117 AD3d 1418, 1419 [4th Dept 2014];

Jacobsen v Krumholz, 41 AD3d 128, 128-129 [1st Dept 2007]); a
rough, irregular surface (see e.g. Tese-Milner v 30 E. 85th St.
Co., 60 AD3d 458, 458 [1st Dept 2009]); the presence of other
defects in the vicinity (see e.g. Young v City of New York, 250
AD2d 383, 384 [1st Dept 1998]); poor lighting (see e.g. McKenzie
v Crossroads Arena, LLC, 291 AD2d 860, 860-861 [4th Dept 2002],
lv dismissed 98 NY2d 647 [2002]); or a location -- such as a
parking lot, premises entrance/exit, or heavily traveled walkway
-- where pedestrians are naturally distracted from looking down
at their feet (see e.g. Brenner v Herricks Union Free Sch. Dist.,
106 AD3d 766, 767 [2d Dept 2013]; Wilson v Time Warner Cable,
Inc., 6 AD3d 801, 802 [3d Dept 2004]; George v N.Y. City Transit
Auth., 306 AD2d 160, 161 [1st Dept 2003]; Glickman v City of New
York, 297 AD2d 220, 221 [1st Dept 2002]; Argenio v Metropolitan
Transp. Auth., 277 AD2d 165, 166 [1st Dept 2000], rearg denied,
2001 NY App Div LEXIS 1472 [1st Dept 2001]; Jacobsen, 41 AD3d at
128-129; Tesak v Marine Midland Bank, N.A., 254 AD2d 717, 718
[4th Dept 1998]).

　　　　Our survey of such cases indicates that the lower
courts, appropriately, find physically small defects to be
actionable when their surrounding circumstances or intrinsic
characteristics make them difficult for a pedestrian to see or to
identify as hazards or difficult to traverse safely on foot.
Attention to the specific circumstances is always required and
undue or exclusive focus on whether a defect is a "trap" or

"snare" is not in keeping with <u>Loughran</u> and <u>Trincere</u>.

Finally, the trivial defect doctrine is best understood with our well-established summary judgment standards in mind.  In a summary judgment motion, the movant must make a prima facie showing of entitlement to judgment as a matter of law before the burden shifts to the party opposing the motion to establish the existence of a material issue of fact (see <u>Alvarez v Prospect Hosp.</u>, 68 NY2d 320, 324 [1986]).  A defendant seeking dismissal of a complaint on the basis that the alleged defect is trivial must make a prima facie showing that the defect is, under the circumstances, physically insignificant and that the characteristics of the defect or the surrounding circumstances do not increase the risks it poses.  Only then does the burden shift to the plaintiff to establish an issue of fact.

V.

We now apply these principles to the cases before us on appeal.

In <u>Hutchinson</u>, defendant Sheridan met its burden of making a prima facie showing that the cylindrical projection was trivial as a matter of law by producing measurements indicating that it was only about one quarter of an inch in height and about five-eighths of an inch in diameter, together with evidence of the surrounding circumstances.  The dimensions are set out in the record on appeal, which contains photographs showing ruler measurements of the object.

Plaintiff Hutchinson, seeking to show a triable issue of fact concerning features of the defect that would magnify the hazard it presents, asserts that the object had an abrupt edge, was irregular in shape, and was firmly inserted into the sidewalk, so that, in the words of the dissenting Justices at the Appellate Division, it "could, without warning, snag a passerby's shoe" (110 AD3d at 556 [Acosta, J.P. and Saxe, J., dissenting]). Hutchinson also suggests that he was not required to look down at his feet while walking along the sidewalk.

The characteristics enumerated by Hutchinson -- the abruptness of the projecting edge, the alleged irregularity of its shape, and its rigidity and firm insertion into the sidewalk -- are not dispositive, being true of many contours in a sidewalk. Moreover, contrary to the assertions of Hutchinson and the Appellate Division dissenters, the test established by the case law in New York is not whether a defect is <u>capable</u> of catching a pedestrian's shoe. Instead, the relevant questions are whether the defect was difficult for a pedestrian to see or to identify as a hazard or difficult to pass over safely on foot in light of the surrounding circumstances.

Here, the metal object that Hutchinson tripped over, protruding only about a quarter of an inch above the sidewalk, was in a well-illuminated location approximately in the middle of the sidewalk and in a place where a pedestrian would not be obliged by crowds or physical surroundings to look only ahead.

The object stood alone and was not hidden or covered in any way so as to make it difficult to see or to identify as a hazard. Its edge was not jagged and the surrounding surface was not uneven. Taking into account all the facts and circumstances presented, including but not limited to the dimensions of the metal object, we conclude that the defect was trivial as a matter of law.

The Appellate Division properly ruled that the defect was not actionable. There is accordingly no need for us to address Sheridan's alternative contention based on lack of actual or constructive notice.

VI.

Plaintiff Zelichenko argues that the trivial defect doctrine should be limited to municipal defendants or to cases involving accidents on sidewalks, and does not apply to his fall on an interior staircase. He asserts that absent the trivial defect doctrine, a municipality would be burdened with inspecting, maintaining and repairing miles of sidewalk so as to rid public paths of every slight defect resulting from weathering and from expansion and contraction with changes in temperature. By contrast, Zelichenko points out, this policy consideration does not apply to owners of buildings, who may reasonably be required to ensure that interior walkways and staircases are safe. Moreover, he argues, expectations differ in varying locations and a person typically expects indoor surfaces to be

more uniform and level, because they are not subject to so many changes due to the forces of nature.

While it is true that pedestrian expectations differ between exterior and interior walking surfaces, and the trivial defect doctrine may have salutary consequences for municipalities, we do not accept Zelichenko's invitation to reframe the law of personal injury liability so radically.  The trivial defect doctrine is grounded on a fundamental principle that spans all types of liability: that if a "defect is so slight that no careful or prudent [person] would reasonably anticipate any danger from its existence," and yet an accident occurs that is traceable to the defect, there is no liability (Beltz v Yonkers, 148 NY 67, 70 [1895]).  This principle is equally applicable to private landlords and municipalities.  Moreover, the trivial defect doctrine has been applied to defects on stairways, including those that are inside privately owned buildings (see e.g. Cassizzi v Fordham Univ., 101 AD3d 645, 646 [1st Dept 2012]; Sawicki v Conklin Realty Co., LLC, 94 AD3d 1083, 1083 [2d Dept 2012]; Vachon v State, 286 AD2d 528, 530 [3d Dept 2001]; Slate v Fredonia Cent. Sch. Dist., 256 AD2d 1210, 1210-1211 [4th Dept 1998]).

Zelichenko's further contentions, however, convince us that reversal is required.  The Appellate Division in Zelichenko, in examining "all of the facts presented" (117 AD3d at 1040) as required by Trincere, concluded as a matter of law that the

defect was trivial, stating in particular that the "chip" was "located almost entirely on the edge of the . . . step . . . and not on the walking surface" (id.).  This was error.[4]

In particular, viewing the evidence in the light most favorable to Zelichenko, as we must in this procedural posture, we conclude that the Appellate Division erroneously decided that the "chip" was not on the walking surface of a step tread. Zelichenko's expert, Sokoloff, citing Professor Templer, explained that, when descending a stairway, a human "foot can make contact with the end of the nosing" so that the walking surface of a step tread extends to the nosing.  Indeed, in the photograph in the record of a foot positioned next to the "chip," the toe of the shoe extends across and over the nosing in a way

---

[4]      The Second Department has attached significance to whether a defect was on "the walking surface" of a stairway in a number of recent cases.  In Maciaszek v Sloninski (105 AD3d 1012, 1013 [2d Dept 2013]), the Second Department held a hole in a staircase to be trivial as matter of law on the basis of circumstances that included that the hole "was one inch in diameter, half an inch deep, and located at the edge of the step."  In Grosskopf v 8320 Parkway Towers Corp. (88 AD3d 765, 766 [2d Dept 2011]), the court held that the alleged defect "consisted of a chip measuring less than two inches wide, located almost entirely on the nosing of the . . . step . . . and not on the walking surface," and concluded that the "chip" was trivial as a matter of law.  In an earlier, distinguishable case, Puma v New York City Tr. Auth. (55 AD3d 585 [2d Dept 2008]), the Second Department held that there was no defective or dangerous condition because the plaintiff's fall in a subway station occurred when his foot became caught in a drainage canal "located at the extreme edge of the stairway tread, underneath the handrail" (id. at 585-586), rather than on a walking surface.  We take no position on whether these cases were correctly decided.

that does not appear forced or unnatural.

Moreover, even if there were room on the step for a person to place his or her foot behind the defect, it would not follow as a matter of law that the defect is "not on the walking surface." That a person may place his or her foot on a step in such a way as to avoid the nosing does not imply that every person will always do so. What counts here is not whether a person could avoid the defect, but whether a person would invariably avoid the defect while walking in a manner typical of human beings descending stairs. A defect underneath a handrail (see Puma, 55 AD3d at 585-586) will presumably not be on the walking surface, but a defect in a place where a person may in the normal course of events place the weight of his or her body, resting on a foot, may be on the walking surface.

Here, the step tread had a missing piece, of irregular shape, 3 1/4 inches in width and at least 1/2 inch in depth, on the nosing of the step, where a person might step, and the record contains an expert affidavit explaining the necessity for step treads to be of uniform horizontal depth. After examining all the pertinent facts and circumstances of this case, as we are required to, we conclude that a material triable issue of fact exists regarding whether the defect was trivial.

For these reasons, the Appellate Division erred in concluding that the defect was nonactionable. Moreover, we agree with Supreme Court that an issue of fact exists as to actual or

constructive notice (see generally Gordon v American Museum of
Natural History, 67 NY2d 836, 837 [1986]; Taylor v New York City
Tr. Auth., 48 NY2d 903, 904 [1979]).  Therefore, the Appellate
Division erred in granting 301 Oriental's summary judgment
motion.

                              VII.

          In Adler, the summary judgment record, which included
deposition testimony and indistinct photographs, but no
measurements of the alleged defect, is inconclusive.  Without
evidence of the dimensions of the "clump," it is not possible to
determine whether it is the kind of physically small defect to
which the trivial defect doctrine applies.  We hold that
defendant failed to meet its initial burden of making a prima
facie showing of entitlement to judgment as a matter of law.  The
burden therefore did not shift to Adler to establish the
existence of a material triable issue of fact.

          We do not imply that there are no cases in which a
fact-finding court could examine photographs and justifiably
infer from them as a matter of law that an elevation or
depression or other defect is so slight as to be trivial as a
matter of law (see e.g. Outlaw v Citibank, N.A., 35 AD3d 564, 565
[2d Dept 2006] ["The photographs of the stair introduced into
evidence by the plaintiff show the patch to be a small, worn,
rectangular-shaped area on the metal safety treads at the edge of
the step.  It has no sharp edges and appears shallow"]; Julian v

Sementelli, 234 AD2d 866, 867 [3d Dept 1996] ["Our examination of those photographs shows only a slight height differential between two slabs of the sidewalk"]).  Photographs that are acknowledged to "fairly and accurately represent the accident site may be used to establish that a defect is trivial and not actionable" (Schenpanski v Promise Deli, Inc., 88 AD3d 982, 984 [2d Dept 2011]).  But we hold that the photographs in this case, whether alone or combined with the deposition testimony, cannot support a ruling of triviality as a matter of law.

For this reason, we agree with Adler's principal argument that the Appellate Division erred in holding that the alleged defect was trivial.  Contrary to Adler's subsidiary contention, however, the Appellate Division committed no error in declining to rule on the notice issue, after it ruled in defendants' favor on another basis.  A defendant moving for summary judgment in a slip-and-fall case is not obliged to demonstrate lack of notice if it can prevail on another ground (see generally Bachrach v Waldbaum, Inc., 261 AD2d 426, 426 [2d Dept 1999]; Colt v Great Atl. & Pac. Tea Co., 209 AD2d 294, 294-295 [1st Dept 1994]).

Nevertheless, because we rule against defendants on their other ground, we must consider the notice issue, and we hold that defendants failed to meet their burden to make a prima facie showing that they neither created nor had notice of the defect as a matter of law.  The deposition testimony left

significant doubt as to who painted the staircase, when it was painted, and whether the "clump" was "visible and apparent and . . . exist[ed] for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it" (Gordon, 67 NY2d at 837).

## VIII.

Trincere stands for the proposition that a defendant cannot use the trivial defect doctrine to prevail on a summary judgment motion solely on the basis of the dimensions of an alleged defect, and that the reviewing court is obliged to consider all the facts and circumstances presented when it decides the motion.  Summary judgment should not be granted to a defendant on the basis of "a mechanistic disposition of a case based exclusively on the dimension[s] of the . . . defect" (Trincere, 90 NY2d at 977-978), and neither should summary judgment be granted in a case in which the dimensions of the alleged defect are unknown and the photographs and descriptions inconclusive (see section VII, discussing Adler).  Moreover, in deciding whether a defendant has met its burden of showing prima facie triviality, a court must -- except in unusual circumstances not present here --  avoid interjecting the question whether the plaintiff might have avoided the accident simply by placing his feet elsewhere (see section VI, discussing Zelichenko).  In sum, there are no shortcuts to summary judgment in a slip-and-fall case.

Accordingly, in <u>Hutchinson</u>, the order of the Appellate Division should be affirmed, with costs; in <u>Zelichenko</u>, the order of the Appellate Division should be reversed, with costs, and defendant's motion for summary judgment denied; and, in <u>Adler</u>, the order of the Appellate Division should be reversed, with costs, and defendants' motion for summary judgment denied.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

<u>For Case No. 144</u>:  Order affirmed, with costs.  Opinion by Judge Fahey.  Chief Judge Lippman and Judges Pigott, Rivera, Abdus-Salaam and Stein concur.

<u>For Case No. 145</u>:  Order reversed, with costs, and defendant's motion for summary judgment denied.  Opinion by Judge Fahey. Chief Judge Lippman and Judges Pigott, Rivera, Abdus-Salaam and Stein concur.

<u>For Case No. 146</u>:  Order reversed, with costs, and defendants' motion for summary judgment denied.  Opinion by Judge Fahey. Chief Judge Lippman and Judges Pigott, Rivera, Abdus-Salaam and Stein concur.

Decided October 20, 2015